# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

AMANDA R. NICHOLSON,           )
                               )
                 Plaintiff,    )
                               )
v.                             )        Case No. CIV-11-110-R
                               )
MICHAEL J. ASTRUE,             )
COMMISSIONER OF THE SOCIAL     )
SECURITY ADMINISTRATION,       )
                               )
                 Defendant.    )

# REPORT AND RECOMMENDATION

Plaintiff, Ms. Amanda R. Nicholson, seeks judicial review of a decision by the Social Security Administration to deny her applications for disability insurance benefits (DIB) and supplemental security income benefits (SSI).  This matter has been referred for proposed findings and recommendations.  *See* 28 U.S.C. § 636(b)(1)(B) and (C).  It is recommended that the Commissioner's decision be reversed and remanded for further proceedings consistent with this Report and Recommendation.

## I.    Procedural Background

Ms. Nicholson filed her applications for DIB and SSI on June 19, 2008, alleging a disability onset date of July 1, 2005.  Administrative Record [Doc. #10] (AR) 124-133, 155.[1] The Social Security Administration denied her application initially and on reconsideration. Following an administrative hearing, an Administrative Law Judge (ALJ) issued an

---

[1]At the administrative hearing, Ms. Nicholson amended her onset date to June 25, 2007. AR 29.

unfavorable decision.  AR 9-22.  The Appeals Council denied Ms. Nicholson's request for review.  This appeal followed.

## II.    The ALJ's Decision

According to the ALJ, Ms. Nicholson's date last insured for purposes of DIB was September 30, 2011.  For purposes of receiving DIB benefits, Ms. Nicholson would have to demonstrate that she became disabled before that date.

The ALJ followed the sequential evaluation process required by agency regulations. *See Fisher-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); 20 C.F.R. §§ 404.1520; 416.920.  At step one, the ALJ determined that Ms. Nicholson had not engaged in substantial gainful activity since the alleged onset date as amended.  AR 14.  At step two, the ALJ determined that Ms. Nicholson has the following severe impairments: bipolar disorder, depression, and borderline personality disorder.  AR 14.  At step three, the ALJ found that Ms. Nicholson's impairments do not meet or medically equal any of the impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1.  AR 16.

The ALJ next determined Ms. Nicholson's residual functional capacity (RFC):

After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: can perform simple repetitive tasks with routine supervision; cannot have public contact or engage in customer service work; is able to interact appropriately with supervisors and co-workers on a superficial work basis, and is able to adapt to work situations.

2

AR 17.  At step four, the ALJ compared Ms. Nicholson's RFC with the physical and mental demands of her past relevant work and concluded that Ms. Nicholson is unable to perform her past relevant work as cashier II, telephone solicitor, informal waitress, customer service clerk, customer service representative, collections clerk, or phlebotomist.  AR 20.  At step five, the ALJ concluded that there are jobs existing in significant numbers in the national economy that Ms. Nicholson could perform, including conveyor tender, hardware assembler, bottling line attendant and machine feeder.  AR 21.

III.    **Standard of Review**

Judicial review of the Commissioner's final decision is limited to determining whether the factual findings are supported by substantial evidence in the record as a whole and whether the correct legal standards were applied.  *See Poppa v. Astrue*, 569 F.3d 1167, 1169 (10th Cir. 2009).  "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003) (quotation omitted).   A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it.  *Branum v. Barnhart*, 385 F.3d 1268, 1270 (10th Cir. 2004). The court "meticulously examine[s] the record as a whole, including anything that may undercut or detract from the [administrative law judge's] findings in order to determine if the substantiality test has been met."  *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (citations omitted).  While the court considers whether the ALJ followed the applicable rules

of law in weighing particular types of evidence in disability cases, the court does not reweigh the evidence or substitute its own judgment for that of the Commissioner. *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (quotations and citations omitted).

## IV.   Issues Raised on Appeal

Ms. Nicholson raises the following issues on appeal:

1.   The ALJ erred in failing to properly weigh the medical source opinions;

2.   The ALJ failed to properly assess Plaintiff's residual functional capacity; and

3.   The ALJ failed to properly evaluate Plaintiff's credibility.

## V.   Analysis

### A.   Analysis of Medical Source Opinions

Ms. Nicholson has a long history of depression, anxiety and bipolar disorder.  On October 28, 2000, Ms. Nicholson voluntarily admitted herself to Norman Regional Hospital complaining of depression, anxiety, sleeplessness and suicidal ideation.  AR 215-230. During her stay, her anxiety improved with medication.  She was diagnosed with bipolar disorder, most recent episode depressed, and a Global Assessment of Functioning (GAF) of 40.[2]

---

[2] A global assessment of functioning (GAF) score "is a subjective determination based on a scale of 1 to 100 of the clinician's judgment of the individual's overall level of functioning." *Salazar v. Barnhart*, 468 F.3d 615, 624 n. 4 (10th Cir. 2006) (*citing* American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders (Text Revision 4th ed. 2000) (DSM-IV) at 32).  The higher the GAF score, the better the individual's psychological, social, and occupational functioning is judged to be.  A GAF of 31 to 40 indicates "[s]ome impairment in reality

(continued...)

Dr. Jennifer Morris treated Ms. Nicholson for her anxiety, depression and bipolar disorder from November 1, 2006, through July 1, 2008.  AR 238-262.  Dr. Morris completed a Treating Physician Mental Functional Assessment Questionnaire on July 7, 2008.  Dr. Morris described symptoms such as mood shifts and  impulsive behavior.  In describing functional limitations related to Ms. Nicholson's condition, Dr. Morris stated that she cannot be consistent, cannot hold a job, cannot show up consistently, and cannot focus or concentrate.  AR 238.

Dr. Carrol Weaver completed a Mental Status Form in July 2008.  Dr. Weaver described Ms. Nicholson as having average intelligence, being oriented x3, having impaired judgment, being anxious, tense, depressed and moody, and being susceptible to panic attacks. Dr. Weaver stated that Ms. Nicholson's response to work pressures, supervision and coworkers was "dependent on specific requirements and level of expectations" presented to Plaintiff in a work situation."  AR 263.

Ms. Nicholson attended counseling sessions with Gloria McCray, LPC, LMFT[3] for five sessions from September through December of 2008.  Ms. McCray completed a Mental Status Form on February 24, 2009.  Ms. McCray reported that Ms. Nicholson exhibited pressured speech and tangential conversation.  She described her client as impulsive with a

---

[2](...continued)
testing or communication" or "major impairment in several areas," a GAF of 41 to 50 indicates "[s]erious symptoms" or "any serious impairment," and a GAF of 51–60 indicates "[m]oderate symptoms" or "moderate difficulty."  DSM-IV at 32–34.

[3]Ms. McCray is a licensed professional counselor and licensed marriage and family therapist.

history of suicide attempts.  She noted that Ms. Nicholson often struggled to meet deadlines and described her prognosis as guarded.  AR 301.

Dr. Ola Nawar evaluated Ms. Nicholson on October 20, 2009.  Ms. Nicholson complained of symptoms stemming from depression, anxiety, ADD, and bipolar illness.  Dr. Nawar reported that Ms. Nicholson exhibited irritability, racing thoughts, pressured speech and impaired ability to focus.  AR 355.  Dr. Nawar assessed Ms. Nicholson's GAF score at 50.  AR 358.  Dr. Nawar completed a Mental Residual Functional Capacity Assessment on May 10, 2010.  He assessed Ms. Nicholson as moderately limited in the following ways:

1.    The ability to remember locations and work-like procedures;

2.    The ability to understand and remember detailed instructions;

3.    The ability to carry out detailed instructions;

4.    The ability to maintain attention and concentration for extended periods;

5.    The ability to sustain an ordinary routine without special supervision;

6.    The ability to interact appropriately with the public;

7.    The ability to accept instructions and respond appropriately to criticism from supervisors; and

8.    The ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes.

Dr. Nawar assessed Ms. Nicholson as markedly limited in the following ways:

1.    The ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances;

2.      The ability to work in coordination with or proximity to others without being distracted by them;

3.      The ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods;

4.      The ability to respond appropriately to changes in the work setting;

5.      The ability to travel to unfamiliar places or use public transportation; and

6.      The ability to set realistic goals or make plans independently of others.

AR 328-329.  Elaborating on his findings, Dr. Nawar wrote:

Amanda suffers from major depressive disorder, severe recurrent.  Her memory, focus, attention and judgement are impaired when her symptoms are severe[,] and it affects her occupational functioning.

AR 330.

Dr. Keith Green, Ph.D., examined Ms. Nicholson, at the request of the agency, on November 12, 2008.  Dr. Green diagnosed Ms. Nicholson with major depressive disorder, recurrent, severe, with psychotic features, and borderline personality disorder.[4] AR 271.  Dr. Green addressed the weaknesses of his own evaluation based on the one-time examination of Ms. Nicholson:

---

[4]The ALJ accepted Dr. Green's diagnosis of borderline personality disorder and determined at step two that borderline personality disorder was a severe impairment.  At step three, however, the ALJ failed to consider the effects of her borderline personality disorder in combination with her other mental disorders.  On remand, the ALJ will have the opportunity to consider the listing criteria for all mental impairments found to be severe at step 2.

Selected background materials were provided to the examiner. Current comprehensive psychodiagnostic testing appropriate to the clamant's capability level, and acquisition of complete background records would be recommended as an independent means of corroborating the following diagnostic impressions, which are based solely upon the patient's clinical presentation, reported complaints, and history.

AR 271.

Ms. Nicholson contends that the ALJ erred in failing to apply the "treating source rule" to the opinions expressed by her treating physicians.

The process an ALJ must follow in weighing a treating physician's opinion is clear: the ALJ "must first consider whether the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques. If the answer to this question is 'no,' then the inquiry at this stage is complete." *Robinson v. Barnhart*, 366 F.3d 1078, 1082 (10th Cir. 2004). But if the answer to the first inquiry is yes, then the ALJ must "confirm that the opinion is consistent with other substantial evidence in the record." *Id.* (quotation omitted). If the treating physician's opinion is well-supported by medically acceptable clinical and diagnostic techniques and not inconsistent with the other substantial evidence in the case record, the opinion must be given controlling weight. *See* Social Security Ruling 96-2p. Even if a treating physician's opinion is not entitled to controlling weight, however, it is still entitled to deference and must be weighed using the relevant factors. *See id.* The factors include the length, frequency, nature, and extent of the treating relationship; the extent to which the opinion is supported by relevant evidence, particularly medical signs and laboratory findings; the extent to which the opinion is consistent with the record as a whole;

the doctor's specialization; and other factors tending to support or contradict the opinion. *See* 20 C.F.R. § § 404.1527(d) and 416.927(d). Ultimately, the ALJ's decision must contain "reasons that are sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004) (quotation omitted).

In this case, the ALJ considered the medical opinions discussed above and relied most heavily on the opinion of the consultative examiner, Dr. Green, giving that opinion "significant weight" despite Dr. Green's suggestion that a complete history should be obtained and more testing should be done to corroborate his diagnosis.

The ALJ did not reveal what weight, if any, she was giving to the opinion of Dr. Morris, the physician with the longest history of treating Ms. Nicholson. The ALJ acknowledged that Dr. Morris assessed Ms. Nicholson's functional restrictions and stated that she would not be able to hold a job because of her inconsistency in going to work and her inability to concentrate. AR 19. The ALJ did not, however, consider any of the factors set forth in the regulations. It appears that the ALJ rejected Dr. Morris's opinion because, according to the ALJ, Dr. Morris "apparently relied quite heavily on the subjective report of symptoms and limitations provided by the claimant, and seemed to uncritically accept as true most, if not all, of what the claimant reported." AR 19. The ALJ had apparently determined that Ms. Nicholson's complaints were not credible, despite the fact that the ALJ herself characterized Ms. Nicholson's work history as "sporadic." In giving Dr. Green's assessment of Ms. Nicholson's mental issues more weight than that given to Dr. Morris's

opinion, the ALJ failed to take into account the fact that Dr. Green specifically stated that he, too, had based his opinions "solely upon the patient's clinical presentation, reported complaints, and history." AR 271. There is no cogent explanation for the ALJ's having given more weight to Dr. Green's consultative opinion than to Dr. Morris's treating physician opinion.

The ALJ gave "some weight" to the opinion of Carrol Weaver, Ph.D.,"based on the treating relationship." AR 19. The ALJ did not consider any factor other than the "treating relationship." The record indicates, however, that Dr. Weaver had seen Ms. Nicholson on only two occasions before she completed the Mental Status Form. AR 263-264. The ALJ's explanation of the weight given this opinion is that the restrictions indicated by Dr. Weaver are "consistent with those determined in this decision." AR 19. On remand, the ALJ should evaluate and determine the weight given to medical opinion before determining the ultimate result of the decision.

Ms. McCray (as noted, a licensed professional counselor and licensed marital and family therapist) counseled Ms. Nicholson on a monthly basis from September 2008 through December 2008. The ALJ gave Ms. McCray's opinion "no weight as it was not provided by an acceptable medical source." AR 19. The regulations state, however, that information from "non-medical sources" may be "valuable sources of evidence for assessing impairment severity and functioning." SSR 06-03p, 2006 WL 2329939 (2006) at 3. The ALJ should have considered Ms. McCray's opinion. Other than the fact that Ms. McCray was not an acceptable medical source, the ALJ gave no reason for the complete rejection of her opinion.

On remand, the ALJ should consider all evidence in the record which relates to the extent of Ms. Nicholson's functional restrictions.

The ALJ stated that she was giving "minimal weight" to Dr. Nawar's opinion based on her determination that the opinion was "inconsistent with the evidence of record." AR 20. The ALJ does not state what evidence is inconsistent with Dr. Nawar's opinion, precluding this Court from adequate review of the ALJ's decision. The ALJ states only that "the treatment history is quite brief." AR 20. This reasoning is inconsistent with the ALJ's decision to give the greatest weight to the opinion of the consultative physician who saw Ms. Nicholson only one time.

In sum, the ALJ's consideration of the medical opinions and opinions of other sources is flawed. On remand, the ALJ should thoroughly consider every opinion from acceptable medical sources and other sources before formulating an RFC. If the ALJ finds inconsistencies between the evidence in the record and an opinion, the ALJ should specifically identify the inconsistent evidence to which she is referring so that this Court can conduct a meaningful review of the ALJ's findings. *See Langley v. Barnhart*, 373 F.3d 1116, 1123 (10th Cir. 2004) (ALJ's failure to specify inconsistencies between physician's opinion and other substantial evidence in the record precluded meaningful review of ALJ's rejection of the physician's opinion).

**B.    The ALJ's Assessment of Ms. Nicholson's RFC**

The ALJ included borderline personality disorder as a severe impairment at step two, but she did not consider the listing for this disorder at step three, nor did she consider the

effect of Plaintiff's symptoms and signs of this disorder on the RFC.  An ALJ is "required to consider all of the claimant's medically determinable impairments, singly and in combination[.]" *Salazar v. Barnhart*, 468 F.3d 615, 621 (10th Cir. 2006) (*citing* 42 U.S.C. § 423(d)(2)(B); 20 C.F.R. §§ 416.920(a), 416.923, 416.945).  An ALJ's "failure to consider all of the impairments is reversible error."  *Id.* (*citing Langley v. Barnhart*, 373 F.3d 1116, 1123-24 (10th Cir. 2004)) (ALJ's failure to consider listing for borderline personality disorder was reversible error).  On remand, the ALJ should consider all listings for severe impairments identified at step 2.

### C.    The ALJ's Credibility Evaluation

Ms. Nicholson challenges the ALJ's credibility analysis.  The Commissioner's final decision should be reversed and remanded for further consideration of the medical opinions of treating physicians and other sources.  On remand, the ALJ will be required to make additional credibility findings.  Therefore, it is unnecessary for this Court to address Ms. Nicholson's challenge to the current credibility analysis.

### RECOMMENDATION

It is recommended that the Commissioner's decision be reversed and remanded for further proceedings consistent with this Report and Recommendation.

### NOTICE OF RIGHT TO OBJECT

The parties are advised of their right to file specific written objections to this Report and Recommendation.  *See* 28 U.S.C. § 636 and Fed.R.Civ.P.72.  Any such objections should be filed with the Clerk of the District Court by December __1st__, 2011.  The parties are

further advised that failure to make timely objection to this Report and Recommendation waives the right to appellate review of the factual and legal issues addressed herein. *Moore v. United States*, 950 F.2d 656 (10th Cir. 1991).

## STATUS OF REFERRAL

This Report and Recommendation terminates the referral by the District Judge in this matter.

ENTERED this   10th   day of November, 2011.

VALERIE K. COUCH
UNITED STATES MAGISTRATE JUDGE